We have four new cases this morning. I think it would be helpful in each of these cases to tell us which claims are still at issue because the briefing seems to cover claims that have already been held in balance. I think that would help our focus if you did that. Ms. Hartman, the first case is 19-1360 Technical Consumer Products v. Lighting Science Group Corporation. Good morning, your honors. May it please the court, I represent the appellants who were the petitioners below in the proceedings before the board and the only claim at issue in this appeal is claim four of the 844 patent. There are two issues in this appeal. First, whether the board analyzed evidence in the record of a motivation to combine the prior art in order to establish the obviousness of claim four. And as to that question, the answer is that the record plainly establishes that the board neither analyzed the evidence of record nor explained why not. The second issue is whether the board ignored common sense in reaching its finding. And we submit as to that that even a layperson could understand the advantage of using commercially available dimensions for a low-profile fixture with something that was already found to be scalable to a range of sizes. Can I ask you a hypothetical? What if an IPR petition said reference X teaches elements 1, 2, 3 of claim 1. And as for the fourth element, referenced Y teaches element 4. It would have been obvious. Therefore, this renders the claim obvious. All the elements are there. Would that be good enough to support an obviousness conclusion? Your Honor, I believe that where the prior art itself, as in this case, Zeng as to the hypothetical would cover claims 1 to 3, and Silescent as to covering claim 4, I'm sorry, element 4 of the hypothetical, where the prior art itself includes the motivation as we believe it does in this case, and I'm of common sense to show that all of this is intended to suit market needs, as the board also found, I think it would be sufficient. What case says that? What case says that all that a patent challenger needs to do is identify all of the claim elements in the prior art, and then that's good enough so long as the fact finder can go running around in the prior art and find the rationale and potential reasoning for combining those particular elements in the same way reciting the claim, and thereby rendering the claim obvious. In Your Honor's hypothetical, you've referred to running around and looking in the prior art. This court has held, for example, in the in-raid dance case and in many other cases, that you can find a motivation to combine in the prior art itself, and we believe that that applies here as well. Correct, but typically, again, it's the patent challenger who's responsible for putting the case together, and it's your burden of proof, as I understand, and I'm guessing you're a patent lawyer, so you know full well that when it comes to 103, all too often, the main event is the rationale for combining all of the elements that you find in the prior art to render a claim obvious. That is sine qua non of 103, and so you need, any time as the patent challenger, somewhere in your theory of obviousness to say the word because. It would have been obvious to take all these elements from these something, and I'm looking at your petition, and I didn't see the because. You know, I didn't see the legal reasoning for why you would match these elements together. If I may, Your Honor, here's where I think we did do it, and and it may be that we didn't use the word because, but in reading the record and the petition, let's start with that, Your Honor will recall that we case indirectly depends, the motivation to scale the Zhang reference to fit a variety of sizes. Of cans, right. Of cans or junction boxes, and of course. And so I understood that. You essentially did provide the reasoning for why you would adapt the Zhang reference to fit within various different cans, junction boxes, because, as you said there, those were all widely used cans and junction boxes. So it would stand to reason that you would want to, in the commercial marketplace, adapt Zhang so that it would fit those already known, already used cans that are out there. But I don't see how that translates to anything with respect to the height to dimension ratio, or the particular height limitation of claim four. But you'd have to provide some showing in the petition or the reply that you argued that there was a motivation to combine. And so maybe you should focus, focus this on what you said in the petition and what you said in the reply that would address that, because I, it may not be sufficient, but I think there's something in there. We believe there is, Your Honor, so I will try to do that. So in addition to building on what we had already argued with respect to claim two, as to the motivation to scale Zhang to a variety of sizes which were widely used, and more generally that scaling Zhang would allow a person of ordinary skill in the art to serve market needs, which of course is one of the considerations, the board found as to that, that the very, that that was persuasive, that reasoning was persuasive, and we argued that exact reasoning as to claim four. It's true that we did not re-recite it, but it had already been established and we specifically incorporated it. And that... Where in your petition do you think is the best place for us to look where you think you Your Honors, I would point to a few instances. One is in the declaration of Dr. Coleman, paragraphs 125 and 126, and then the argument as to those references. Where's the argument in the petition and the reply that addresses this? I think that is something that we're interested in. I believe, Your Honors, it is at pages 206 and 207 of the petition. What page of the appendix? Appendix 206 to 207. And this is where we say in the very title that we are using Zhang plus Soderman and Silescent. Silescent is the commercial embodiment that has explicitly the dimensions that are built upon what's already been established with respect to claim two. We incorporate that and then we say all that was left were the specific dimensions, which Judge Chen asked us about. And as to those, those are found in Silescent. Silescent touts that it is an ultra low-profile light fixture and it demonstrates in and of itself, which in the cases that we've cited, you look to prior art for that motivation. Silescent itself refers to... What's your best sentence here at A206, A207? I mean, I see some sentences here saying it'd be obvious to combine the teachings of Silescent and Soderman, but I don't see any sentence here that tells me that you would want to use the dimension ratio disclosed in Silescent and Soderman and modify Zhang in that way. Where's the combination of Zhang with Silescent and Soderman statement in A206, A207, and the reasoning for why you would make that modification to Zhang? Your Honor, claim four is addressed on appendix 207. That, of course, builds on claim three. Claim three itself talks about implementing Zhang to cover the four-inch boxes, to have the height that is at issue in claim three. Claim four then builds on that on appendix 207. As discussed above, this is the second sentence, it says, as discussed above, Silescent discloses the overall height and it would have been obvious to use those dimensions in order to cover what would predictably be a four-inch box. It says to implement Soderman. It doesn't say to implement Zhang or to modify Zhang. That's the problem, right? Well, Your Honor's right. It says Soderman and I can't say whether that was correct, but I think if we look at the totality of the evidence before the board, including within the prior art itself, couple it to what the board had already found with respect to Zhang. All you have are the specific dimensions. Those are clearly, evidently, and obviously desirable for an ultra-low-profile fixture, which Silescent itself says. It touts its ultra-low-profile benefits and a person of ordinary skill in the art who is looking to find those dimensions would look at both of those. And we believe that in the court's analysis applies here as well. Show us what you did when you got to the reply. So, Your Honors, we argued common sense in the reply and we pointed to... Give us a page. A400. I believe that is correct, Your Honor. In the reply, we argued that exercising ordinary common sense and creativity, it would have been apparent to a skilled artisan to follow the teachings of practitioners that meet the claimed height-dimension ratio. And that refers specifically to Dr. Coleman's declaration, rather, at paragraph 94. So the claimed height-dimension ratio, that's a limitation recited in Claim 3. That's right, Your Honor. Claim 4, which is the claim that's on appeal here, actually has a different limitation. That's the specific height limitation of something like 1.5 inches, right? That's right, although Claim 4 depends on Claim 3. Right, but the problem here is, even if we wanted to say that it's not too late to raise your rationale for combining elements in the reply, as opposed, after failing to raise it in the petition, even when you invoke common sense, it's only with respect to the Claim 4 limitation. I mean, these might be minor differences, but I think these differences make a difference when, at a certain point, as a matter of form, you have to actually give me a theory as to the claim you're actually attacking. Here, that's Claim 4. Here, Claim 4 has the limitation about a specific height, and you're not referring to that specific height limitation when you invoke common sense in your reply. Well, as this Court has held, I understand what Your Honor is saying, but common sense, as even the Appellee's Authority recognizes, doesn't require that you look for a hint or suggestion. But it does require that you argue common sense. I mean, that's what our cases have been suggesting. It's not really up to the Board to go looking for a common sense solution. It's the burden's on the petitioner to point to a common sense aspect of the thing and to argue that that provides the motivation. And I guess the problem is that here, even in the reply, you do address the ratio, but you don't address the height limitation, right? Well, Your Honor, we specifically refer to Silescent in the reply, which has the height dimension that is the basis for Claim 4. So I would submit that we do reference what is required for Claim 4, and in the reply, argue the common sense point. I don't believe that the cases require there is a common sense bell to be rung. I think the case is established that the court has to use some logic and common sense when looking at any board decision. Even where the board did not consider common sense, this court has required that common sense be considered as part of the obviousness analysis. I don't think there are any cases that say that we or the board has to address common sense unless it's been brought up by the petitioner. Is there such a case? No, Your Honor, I was intended to be making the point that the cases do not require that common sense be used in a particular kind of argument. I don't understand that. I mean, I thought the cases that I'm familiar with suggest that common sense is relevant, but that you have to bring it up, you have to argue it, rather than expect the board to do it on its own. Well, Your Honor, I think that the cases, and of course Your Honor is familiar with these, having written in the WhatsApp case and others, that common sense does get considered. And it's true that the board is not required to fish around for something, but we do have to look at the totality of the evidence before the board. And here, there's nowhere that you have to stretch in order to apply common sense in combining these two references. When you already know, as the board found, that you are scaling the primary reference to fit a variety of sizes to suit market needs, and Cilescent provides those, again, market needs, it's the commercial embodiment that has those specific dimensions, there's no stretch there. It's immediately obvious, we would contend, that you would apply the dimensions of Cilescent. Well, there may not be a stretch here, but I mean, this seems to me recently to be a common problem of the failure of petitioners and patentees, too, sometimes, to dot the I's and cross the T's. And I don't know how we get away from that. I understand, Your Honor, and I would submit that we put together all the evidence. In hindsight, maybe we didn't cross the T in a particular way that is straight and it's, you know, a little bit angled, but all of the evidence in the record establishes the obviousness. And the further problem with the board's decision is that it never explained why it didn't consider that evidence. When it found that it would have been obvious to scale Zang to fit a variety of sizes, including to fit market needs, and it had the very reference before it that was on sale and had been sold with those exact dimensions, it should have explained why it was disregarding that evidence. And we believe it was error for it to not do so. Okay, unless there are further questions, we're out of time. We'll give you two minutes for rebuttal. Mr. Neruzzi? Thank you, Your Honors, and may it please the Court, Kayvon Neruzzi for the appellee. Your Honors, I will keep the argument as brief as possible to address the questions that you have. I think the board's decision and the substantial evidence supporting its findings are self-evident in the record. The starting point for this analysis is that the finding or lack of finding of a motivation to combine is a factual determination that's reviewed for substantial evidence. Here the board thoroughly assessed the very scant arguments and allegations that the petitioner put forth, considered them, and found them entirely lacking. And in particular, the board stated at Appendix 50, Petitioner does not provide any reason or motivation why an ordinarily skilled artisan would have combined the teachings of Soderman and Solescent with those of Zhang, which I have been thinking of as Zhang in my mind, so if I say it differently, I apologize. That's really critical because it's this link that we're missing here as Your Honors have raised with the appellant thus far. I want to go straight to Appendix 400 because I think that's the only place where we have any sort of discussion of an allegation of a motivation to combine. As a starting point, as Judge Chen alluded to, we think it's untimely to raise that theory of a motivation to combine in the reply brief for the first time. SAS Institute from the Supreme Court tells us that it's the petition itself that guides the proceeding all the way through from the beginning to the end. If it's not in there, it's not in there. If it is in there, then we have to deal with it going forward. If we do engage with the argument made at Appendix 400, what we have here is this allegation that in designing a light into the room, it would have been apparent to the skilled artisan to follow the teachings of Celestin. There are several shortcomings with that allegation that the Board rightly found. The Board's decision is that there's no tie between Celestin and Soderman and a modification to Zhang, and that's absolutely true even with respect to this allegation at Appendix 400 for the following reasons. The scaling consideration that my friend on the other side was referring to has to do with scaling the width of Zhang to cover a four-inch opening. It has nothing to do with changing the height of Zhang. This allegation- Where's the paragraph 94 reference in the appendix here? That's Dr. Coleman's declaration, Your Honor, their excerpt. Maybe I can ask my friend since it's their citation. 125, Your Honor. May I briefly finish the point that I was about to conclude, Your Honor, before we turn to that? I think it's on page 560, isn't it? Maybe I'm mistaken. Anyway, go ahead and find it. Yes, Your Honor. The scaling consideration with respect to Zhang is a width adjustment consideration. It has nothing to do with the height. And the limitations of Claims 3 and 4 are directed to height considerations and Claim 4 in particular. So motivation to adjust the width of Zhang doesn't tell us anything about scaling the height. Now, in Appendix 400, they have this argument that you want to protrude into the room as little as possible. Well, that doesn't have anything to do- That's the height. That's the height. And that has nothing to do with Zhang whatsoever. It's not tied to any motivation to change Zhang. And in fact, there's no argument or showing or even an allegation that Zhang has a problem of protruding into the room by any amount that would be- Is it the title of Soderman or Selescent, Low Profile Light? Correct, Your Honor. Is Claim 4 being asserted in any litigation right now? It is not actively asserted, Your Honor. There are some state cases. Some state cases. But Claim 4 is in play? It is in play, Your Honor. Are there any defendants that are not stopped from raising a 103 challenge to Claim 4 in those state litigations? It depends on the nature of the real parties and interest question. So there are defendants who have not formally been named parties to some of these IPRs. Okay, so Claim 4 could still potentially be easily invalidated by somebody that has just a little bit better of a case. I don't think it would be so easy, Your Honor. I think that sometimes things end up being harder than they look. But to your point, yes, I think that there are other people who seek to challenge Claim 4. Then we would raise arguments as to whether they're still permitted to do that in light of estoppel considerations, real parties and interest, and so forth. But nonetheless, it's certainly a possibility. Is this height limitation involved in other IPRs for similar claims? It is a similar limitation. There are similarities to this limitation and other patents within the same family. This particular claim, though— Has the Board found the height limitation to be obvious with respect to those other patents? I don't believe so, Your Honor. There's no particular claim that is all of these limitations together, since it's a unique claim. I do want to point out— But I was asking specifically about the height limitation. I'm not aware of a claim that has the same height limitation requirement that has been invalidated. Now, I want to point out a couple of things. If we look at Zang at Appendix 694, 695, and 696, we will see in the figures that the heat sink of Zang, which is the height consideration here, fits comfortably within a can. And the only thing that protrudes is the outer ring, which must always protrude and be there. It doesn't protrude by any more than a fraction of an inch. And so there's no height protrusion problem in Zang to fix or improve by squishing down the height based on this common sense sort of theory that comes out of Soderman or Solescent. And I think that's really relevant because, again, what we're missing here is the tie between Soderman and Solescent and a motivation to do anything to Zang. And you're— Do we have the site to Paragraph 94? Your Honor, I believe that you pointed to Appendix 560. Is that where it is? If we're looking for Paragraph 94, it is indeed at Appendix 560. It's a pretty short paragraph. It's the definition of conclusory. I don't think that's the right reference because this is talking about the 844 path. Which paragraph is cited? Well, let's go back for a moment. We were at Appendix 400— In Paragraph 2. Excuse me. Okay. And Appendix 400 cites indeed to Dr. Pullman at Paragraph 94. Paragraph 94 is at Appendix 560. And Paragraph 94 is a conclusory sentence about Claim 24. So I think it's potentially a miscitation in their briefing. Okay. Anything further? Your Honor, I will just add for the Court's interest, I'm a consumer of these lighting products. I have been since before I ever met this client and came across these patents. And there are indeed today in the marketplace ones that have substantially higher height dimensions that are very widely sold. Is this in the record? You're suggesting that we should take account of things that you say here that aren't in the record? No, I— If you could do that, maybe they could do that. That's fine, Your Honor. I'll rest here. Okay. Ms. Ford? Just very briefly, Your Honors. I believe that the reference to Paragraph 94 of Dr. Coleman's declaration is a typo. And it is in fact 24, not 94. And that's found at Appendix 528. And this is then what in the reply the petitioners referred to when talking about exercising ordinary common sense. Paragraph 24 of the declaration refers to just what these low-profile features are, how they appear. And as Judge Chen recognized, Xylescent itself touts in its title and in its images that it is ultra-low profile. Is it your view that the Board should have been able to figure that out, that it was Paragraph 24 that was being cited? Well, Your Honor, I wish that they had. I understand that a typographical error is our burden and not the Board's burden. But the Board didn't explain why it wasn't considered. Did it say it didn't see a motivation to modify Zhang? That was its reasoning. But that is inconsistent with its reasoning that it applied with respect to Claim 2, where it said exactly that. It would be obvious to modify Zhang. And to answer Judge Dyke's question earlier about the height limitation, the height limitation of Claim 3 is consistent with the height limitation of Claim 4, notwithstanding what my friend on the other side has found in stores. We're dealing with 4-inch cans. Zhang itself recognizes that there are a variety of sizes. A 4-inch can is not going to have a significant height to it. Now, this Paragraph 24, it doesn't say anything about having a desirable particular size, right? It just says lighting fixtures come in a variety of sizes. That's correct, Your Honor. And that's where we think that the Court should apply the Board's finding as to the reasoning, which it found persuasive, as to why you would modify to a variety of, say, sizes, which Zhang itself supplies. Okay. All right. We're out of time. Thank you. Our next—